IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| **A.M., A MINOR, BY HER PARENT AND NEXT FRIEND, OPRAH COOPER, JR., F/K/A ODA HAKORIMANA**<br>1834 CARL COURT, APT. #14<br>LOUISVILLE, KY 40215<br><br>Plaintiffs,<br><br>*v.*<br><br>**VIRGINIA COUNCIL OF CHURCHES, INC.**<br><br>*Serve*:<br><br>PHILIP H GOODPASTURE<br>200 SOUTH 10TH STREET, SUITE 1600<br>P.O. BOX 1320<br>RICHMOND VA 23218<br><br>~and~<br><br>**CHURCH WORLD SERVICE, INC.**<br><br>*Serve*:<br><br>JOANNE RENDALL<br>c/o Church World Service, Inc.<br>28606 PHILLIPS Street<br>ELKHART, IN 46514<br><br>Defendants. | Case No.<br>Judge: |

## **COMPLAINT**

Now comes the Plaintiff, A.M., by her parent and next friend, OPRAH COOPER, JR., f/k/a ODA HAKORIMANA, by and through her attorneys, JEFFREY A. SEXTON and JOHN BYRNES, and in complaining against Defendants, VIRGINIA COUNCIL OF

CHURCHES and CHURCH WORLD SERVICE, pleading hypothetically and in the alternative, states as follows:

## PARTIES

1. Defendant VIRGINIA COUNCIL OF CHURCHES (VCC) is a Virginia corporation with a principal office address of 1214 WEST GRAHAM ROAD, RICHMOND, VA 23220.  It is a local resettlement affiliate of Church World Service (CWS), with which the U.S. government's Department of State has cooperative agreements for refugee resettlement.

2. Defendant CHURCH WORLD SERVICE, INC. (CWS) is a New York corporation with a principal office address of 475 RIVERSIDE DRIVE, SUITE 678 NEW YORK, NEW YORK 10115 and another office at 28606 PHILLIPS STREET, P.O. BOX 968, ELKHART, IN 46515 with a registered agent named Joanne Rendall listed.  No registered agent is listed with the New York Secretary of State.  CWS operates its Church World Service Immigration and Refugee Program (IRP) which prepares the case files for all refugees in sub-Saharan Africa who are being considered for resettlement in the United States through a Cooperative Agreement with the Department of State/Bureau for Population, Refugees, and Migration.

3. A.M., minor (Exhibit 1 hereto), is a resident of Louisville, Kentucky, and was born in the United States of America on May 15, 2007, to her mother, OPRAH COOPER, JR., f/k/a ODA HAKORIMANA.  A.M. is permanently mentally disabled.

4. A.M.'s mother and siblings are refugees from Tanzania re-settled in the U.S.A. by Defendants VCC and CWS under the CWS IRP described above in paragraph 2.

*See also* Exhibit 5 hereto, page 16, lines 7-14 of deposition of Mary Beth Alphin taken April 13, 2011.

5. CWS receives funding from the U.S. government to operate its IRP.

6. VCC, as a local resettlement affiliate of CWS, received 17.53% of its 2006-2007 revenue from CWS according to its website (see Exhibit 2 hereto).

7. As a result of receiving funding from the U.S. government, both CWS and VCC qualify as persons who were acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory for purposes of 42 U.S.C. §1983.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983. This Court has supplemental jurisdiction over plaintiff's causes of action arising under Maryland state law pursuant to 28 U.S.C. § 1367.

9. Venue lies in the United States District Court for the District of Maryland because all acts complained of took place in Maryland.

10. A.M., a minor, was an infant of approximately five (5) months of age and by her mother was placed contractually with Maryland licensed daycare provider Jessica V. Rodriguez ("Rodriguez") on October 25, 2007, at her home daycare located at 18202 Roycroft Drive, Hagerstown, Maryland 27140.

11. Laura Abaandou ("Abaandou"), an employee and agent of VCC, found the daycare operated by Rodriguez (see attached Exhibit 3, page 7, *et seq.* from deposition of Laura Abaandou taken April 13, 2011) and referred A.M.'s mother to said daycare.

12. VCC's agent and employee, Abaandou, visited the Rodriguez daycare (Exhibit 3, page 9) prior to A.M. attending and undertook a legal duty to ascertain whether the daycare was being operated in compliance with Maryland state laws, rules and regulations, specifically Maryland Code Annotated, Family Law Article §5-570, *et seq.*, and Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4 hereto).

13. VCC's agent and employee, Abaandou, admitted (Exhibit 3, page 9, lines 11-13) that she did not confirm whether the daycare had insurance in conformity with Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4).

14. VCC's agent and employee, Abaandou, admitted (Exhibit 3, page 9, lines 17-19) that she received no training or guidance from her employer, VCC, as to how to properly conduct an onsite investigation of the Rodriguez daycare or what questions to ask of Rodriguez.

15. Mary Beth Alphin of VCC was Abaandou's supervisor (Exhibit 3, page 10, lines 1-9).

16. On October 25, 2007, a heinous act occurred within the confines of the Rodriguez daycare and A.M., minor, who was otherwise normal from birth until this day, suffered severe injuries to her neck, skull, brain, face and eyes (Exhibit 6 hereto), as a direct and proximate result of the actions of either of Rodriguez or her boyfriend, Randy Rosaio ("Rosaio"), whom Rodriguez permitted to have access to A.M. for several hours, according to the results of an extensive Maryland law enforcement investigation.

17. As a direct and proximate result of the actions of Rodriguez and/or Rosaio inside the daycare on October 25, 2007, medical providers and medical experts diagnosed A.M. with—in short—"shaken baby syndrome" and A.M. was caused to suffer severe and

permanent damage to her brain and to the rest of her body, severe pain and suffering, and will live in a permanent state of mental and physical impairment for the remainder of her days and will incur substantial past and future medical expenses.

18. As a direct and proximate result of the failure of CWS to properly train and supervise VCC as a local resettlement affiliate to whom it was providing direct financial support, and as a direct and proximate result of the failure of VCC to properly train and supervise its employee and agent, Abaandou, to properly ascertain and confirm whether the Rodriguez daycare was insured pursuant to Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4), before referring A.M., minor, to said daycare, A.M., minor, has incurred substantial financial harm in the form of past medical expenses and will incur substantial future medical expenses without the ability to seek legal redress against a homeowners liability policy of the Rodriguez daycare.

### **COUNT I —42 U.S.C. §1983**

19. Plaintiff hereby adopts and re-alleges paragraphs 1 through 18 as and for paragraphs 1 through 18 of Count I as though fully set forth herein.

20. Plaintiff claims damages under 42 U.S.C. §1983 for her past and future financial injuries set forth above against Defendants CWS and VCC for violation of her constitutional rights under color of law, including, but not limited to, breach of the duties of both Defendants CWS and VCC to follow, have procedures in place to ensure compliance by their respective agents and employees with, and have procedures in place to ensure compliance by service providers (like Rodriguez' daycare) selected by each on behalf of resettled refugees with Maryland Code Annotated, Family Law Article §5-570, *et seq.*, and Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4 hereto).

21. As a direct and proximate result of the aforementioned breach of duties, *inter alia*, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## COUNT II
### Failure to Train and Supervise

22. Plaintiff hereby adopts and re-alleges paragraphs 1 through 21 as and for paragraphs 1 through 21 of Count II as though fully set forth herein.

23. CWS negligently failed to properly train and supervise VCC, as its local resettlement affiliate, with respect to evaluating and selecting childcare for refugees at facilities such as Rodriguez' daycare and, specifically, whether Rodriguez was compliance with Maryland Code Annotated, Family Law Article §5-570, *et seq.*, and Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4 hereto).

24. As a direct and proximate result of the aforementioned breach of CWS' duty to train and supervise, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## COUNT III
### Failure to Train and Supervise

25. Plaintiff hereby adopts and re-alleges paragraphs 1 through 24 as and for paragraphs 1 through 24 of Count III as though fully set forth herein.

26. By Abaandou's own admission (see Exhibit 3 hereto, page 9, lines 17-19, from deposition of Laura Abaandou taken April 13, 2011), VCC negligently failed to properly train and supervise its agent and employee, Laura Abaandou, with respect to evaluating and selecting childcare for refugees at facilities such as Rodriguez' daycare and, specifically, whether Rodriguez was in compliance with Maryland Code Annotated, Family

Law Article §5-570, *et seq.*, and Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4 hereto).

27. As a direct and proximate result of the aforementioned breach of VCC's duty to train and supervise, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## COUNT IV
### *Respondeat Superior*

28. Plaintiff hereby adopts and re-alleges paragraphs 1 through 27 as and for paragraphs 1 through 27 of Count IV as though fully set forth herein.

29. Defendant CWS is vicariously liable for negligent acts committed against Plaintiff by VCC. VCC was CWS' local resettlement agent under its IRP and CWS funded 17.53% of VCC's 2006-2007 Revenue by VCC's own admission.

30. As a direct and proximate result of the aforementioned negligence, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## COUNT V
### *Respondeat Superior*

31. Plaintiff hereby adopts and re-alleges paragraphs 1 through 30 as and for paragraphs 1 through 30 of Count V as though fully set forth herein.

32. Defendant VCC is vicariously liable for negligent acts committed against Plaintiff by VCC's agent and employee, Laura Abaandou.

33. As a direct and proximate result of the aforementioned negligence, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## COUNT VI
### *Negligence*

34. Plaintiff hereby adopts and re-alleges paragraphs 1 through 33 as and for paragraphs 1 through 33 of Count VI as though fully set forth herein.

35. Defendants CWS and VCC and VCC's agent and employee, Laura Abaandou, owed Plaintiff a duty of care to prevent the financial harm she has suffered and will continue to suffer.

36. Defendants CWS and VCC and VCC's agents and employees, such as Laura Abaandou, explicitly undertake said duty when voluntarily becoming involved in the resettlement of refugees such as Plaintiff and her immediate family in the United States and, by Abaandou's own admission, assist such non-English speaking refugees finding medical care, health insurance, housing, transportation and childcare, *inter alia*. (See attached Exhibit 3, page 7, *et seq.* from deposition of Laura Abaandou taken April 13, 2011).

37. VCC's agent and employee, Abaandou, further undertook said duty of care owed to Plaintiff by visiting and inspecting Rodriguez' daycare prior to Plaintiff's enrollment (see attached Exhibit 3, page 8, line 25, through page 9, lines 1-10, from deposition of Laura Abaandou taken April 13, 2011) because Plaintiff's mother only spoke French and was unable to care for her Plaintiff daughter by communicating with Rodriguez with respect to the (very unfamiliar, no less) legal requirements of operating a daycare in Maryland.

38. VCC's agent and employee, Abaandou, breached said duty owed to Plaintiff by her own admission (Exhibit 3, page 9, lines 11-16) from deposition of Laura Abaandou taken April 13, 2011) when she did not confirm if Rodriguez' daycare had insurance

pursuant to Maryland Code Annotated, Family Law Article §5-570, *et seq.*, and Maryland Code Annotated, Insurance section, §19-202 (as in effect 2007) (Exhibit 4 hereto).

39. As a direct and proximate result of the aforementioned breach, Plaintiff has suffered and will in the future suffer significant financial harm in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Award Plaintiff compensatory and punitive damages against Defendants;

C. Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and any other applicable provisions of law;

D. Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

Dated:  February 3, 2020

Respectfully submitted,

PAULSON & NACE, PLLC

  /s/ Christopher T. Nace
Christopher T. Nace
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
ctnace@paulsonandnace.com
*Counsel for Plaintiff*

/s/ Jeffrey A. Sexton
Jeffrey A. Sexton and John Byrnes
325 W. Main St., Ste. 150
Louisville, KY  40202
(502) 893-3784 Telephone
(800) 524-3139 Facsimile
jsexton@jeffsexton.com
*Pro Hac Vice To Be Submitted*
*Counsel for Plaintiff*

## **CERTIFICATE OF GOOD STANDING**

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

    /s/ Christopher T. Nace
Christopher T. Nace, Esq.